Williams, J.
The written instrument on which the plaintiff brought his action, is either capable of construction, or it is void for uncertainty; for, if the terms employed by the parties, though intended for a contract, be so incomplete or ambiguous that, after applying to them all the helps which the rules of interpretation afford and permit, they are still so uncertain, that what the parties mutually assented to, cannot be ascertained, the consequence is the same as when there is no assent; there is no contract. But,'if possible with such helps, they should be given such construction as will uphold the contract, and give effect to the intention of the parties, rather than one which renders them void for uncertainty; and to avoid the latter alternative, the words will be taken most strongly against the person employing them, especially where he is the only party subscribing the contract. The words of obligation in a contract, “ are interpreted most strongly against the obligor, for it is presumed that he used those most favorable to his interests; and all doubtful terms or ambiguous words are to be construed against him. He who *35 speaks, should speak plainly, or the other party may explain to his own advantage.” State v. Worthington, 7 Ohio, pt. 1, p. 171.
Though the rules of evidence exclude oral testimony to contradict or vary the terms of written agreements, they permit proof of the circumstances under which they were made, the surroundings of the parties, their relations to each other, and to the subject-matter of the contract, to enable the courts called upon to interpret them, to put themselves in the place of the parties, with all the information possessed by them, the better to understand the terms employed in the contract, arrive at the intention of .the parties, and give effect to the agreement.
Consistently with these rules, it was without objection, shown on the trial, that the “Woolen Mill Company of Bucyrus ” was the name of a co-partnership, which consisted of the plaintiff and another, who, at the date of instrument sued on, were the owners of the Woolen Mill property therein mentioned; and that the half of the property therein stated as having been sold to Abraham Monnett, was the plaintiff’s undivided interest in it. The answer admits this, for it avers that “ the plaintiff sold to said Abraham Monnett his interest in the said Woolen Mill property.” It was also shown, and not controverted, that Abraham Monnett executed the written obligation, delivered the same to the plaintiff, and paid to him the twenty-five hundred dollars stipulated to be paid April 1st, 1877, and that a deed of conveyance was soon thereafter executed to Abraham Mon-nett, vesting in him the undivided half of the property, which he afterward sold and conveyed to another person.
Aided by these extrinsic facts, no serious difficulty is- encountered in the construction of the instrument. It recites, that the sale was for the sum of seven thousand five hundred dollars, and provides that twenty-five hundred dollars thereof is to be paid April 1st, 1877. It is true, it does not state that Abraham Monnett is to pay it, nor contain any direct promise to pay to the plaintiff. But since Abraham Mon-nett purchased the.property of the plaintiff, and executed and delivered to him the written instrument, stating the purchase by him, and the terms and amounts of the payments *36 tberefor, it would be idle to say, that the twenty-five hundred dollars was not to be paid by Abraham Monnett to the plaintiff. About this there -is no controversy, and accordingly Abraham Monnett, contemporaneously with the execution of the deed to him, paid to the plaintiff this twenty-five hundred dollars. The obligation to pay the balance of the purchase price of the property is equally clear. Whatever of uncertainty there is, relates to the time and mode of payment. The language of the instrument, “ two thousand five hundred dollars to be paid April 1st, 1877, the other five thousand dollars with the following provisions,” plainly imports that the five thousand dollars is to be paid, as well as the twenty-five hundred dollars, and by the same pei’son, and to the same person, except as otherwise controlled by the provisions which follow. There is nothing in those provisions which discharges the obligation to pay the five thousand dollars, or extinguishes the right of the plaintiff to receive it. They are not only consistent with, but confirm and accentuate, both the obligation of Abraham Monnett to pay, and the right of the plaintiff to receive payment. They provide, that after Abraham Monnett receives dividends to the amount often per ■cent, on the money by him invested in the mill, the plaintiff is to receive a share of the remaining dividends, as interest ■on the five thousand dollars, for the term of five' years. 'The right of the plaintiff to the interest in the event provided for, would seem to establish his title to the principal :also; and, as A braham Monnett is the party binding himself to that obligation, the duty became his, to pay the plaintiff the interest, as it accrued according to its terms. If the mills should not pay a dividend of ten per cent, on the money invested by Abraham Monnett, the provision for the payment of interest to the plaintiff fails; the result of which is, that Abraham Monnett is enabled to retain the five thousand dollars of purchase money for the property, for the five years without interest, and he might, at the expiration of that period, continue to retain it, on the same conditions as to interest, until the mill should pay dividends equal to ten per cent, on his investment. Under these stipulations, the principal of five thousand dollars, became due in any event at the expiration of five years from the *37 date of the obligation, unless Abraham Monnett should then elect to continue the conditions in regard to the interest therein set forth,which he did not do. On the contrary, he sold and conveyed away his undivided half of the property, ceased to have any interest in, or control over it, and thus put it out of his power to perform the stipulations for the payment of interest, which were beneficial to the plaintiff, and which no doubt constituted the consideration, at least in part, for the credit given on that part of the purchase price of the property. This was a conclusive election, on the part of Abraham Monnett, not to prolong the time for the payment of the five thousand dollars on the conditions specified, and the money became payable absolutely.
This, we think, is the proper interpretation of the obligation, aided by such extrinsic facts, either admitted by the pleadings, or not controverted on the trial, as, consistently with the rules of evidence, may be properly considered in giving construction to it; and the trial court err§d in submitting its construction to the jury. The extrinsic circumstances material to its construction, were undispui ed and definitely ascertained; and if they were not, it was still the duty of the court to give construction to the instrument, for the construction of all written instruments belongs to the court alone; “ and it is the duty of the jury to take the construction from the court, either absolutely, if there be no words to be construed, as words of art, or phrases used in commerce, and no surrounding circumstances to be ascertained; or conditionally, when those words or circumstances are necessarily referred to them.” Neilson v. Hofford, 8 M. & M. 806, 823.
2. It follows, also, that the court erred in admitting the evidence, given by the defendants, to contradict the terms of the instrument, and engraft upon it others it did not contain, unless such evidence was competent, under the pleadings, with the view to its reformation.
W e know that the rules, which forbid the introduction of parol evidence to control written contracts, do not exclude proof of the consideration, or of promises or agreements wholly collateral to the writing, like agreements between sureties or joint *38 promisors; nor apply, where express reference is made in the written instrument, to a parol contract, or where the written instrument does not purport to be a complete expression of the contract, or evidently appears to express only some part of it, and that which is sought to be proven, does not contradict its terms, but is consistent with them. But the evidence admitted in this case, does not fall within either of these classes. Its purpose and tendency were, to prove that the instrument did not contain the true agreement between the parties, and to establish a contract materially different from that expressed by it. Such evidence can not be admitted, except when the reformation of the instrument is sought in equity. Holzworth v. Koch, 26 Ohio St. 33; Neil v. The Board of Trustees, 31 Ohio St. 15 ; Denton v. Whitney, 31 Ohio St. 89. And the party asking its reformation, must by proper allegations in his pleading, show his right to such relief. White v. Denman, 1 Ohio St. 110. The defendants below neither sought the remedy, nor do their pleadings entitle them to that relief
There being no dispute about the facts which entitle the plaintiff to judgment, there is no reason why the case should not now be finally disposed of.
Judgments of the circuit court, and court of common pleas reversed, and j udgment for the plaintiff.